UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN ANTHONY MACGREGOR, | No. 2:13-cv-1883 JAM AC P |
| Plaintiff, | |
| v. | AMENDED ORDER AND FINDINGS AND RECOMMENDATIONS |
| DIAL, et al., | |
| Defendants. | |

Upon consideration of the issues raised in Defendants' Objections to Magistrate Judge's Findings and Recommendations, ECF No. 76, the court sua sponte vacates the March 4, 2015 Order and Findings and Recommendations, ECF No. 75, and issues the following Amended Order and Findings and Recommendations:

Plaintiff is a California inmate proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's first amended complaint, ECF No. 34, for violations of plaintiff's rights under the Eighth Amendment. Presently before the court are defendants' motion to dismiss the complaint on statute of limitations grounds and defendants' motion for partial summary judgment based on failure to exhaust administrative remedies. Both motions are fully briefed.

////

////

1

I. Background

Plaintiff's original complaint, filed on September 5, 2013, alleged that defendants Dr. Dial and Dr. James violated plaintiff's Eighth Amendment rights when they were deliberately indifferent to plaintiff's serious medical need for treatment of a hernia. ECF No. 1. Defendants Dial and James brought a motion to dismiss plaintiff's original complaint. ECF No. 30. Plaintiff then filed a first amended complaint, ECF No. 34, and defendants brought a motion to dismiss plaintiff's first amended complaint, ECF No. 36. By order dated March 27, 2014, the court ruled that the first amended complaint superseded the original complaint, and vacated defendants' motion to dismiss the original complaint. ECF No. 38.

Defendants' March 12, 2014 motion to dismiss plaintiff's first amended complaint raised statute of limitations and administrative exhaustion issues. In light of the Ninth Circuit's decision in Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014), which held that exhaustion issues should in most cases be presented in a motion for summary judgment rather than in a motion to dismiss under Rule 12(b), the court vacated defendants' motion to dismiss. ECF No. 43. The court permitted defendants to file a motion for summary judgment on the issue of administrative exhaustion and to re-file the portion of the vacated motion brought pursuant to Rule 12(b)(6) in a separate motion or in combination with a motion for summary judgment.

On May 6, 2014, defendants brought a motion to dismiss on statute of limitations grounds, ECF No. 45, and a separate motion for partial summary judgment alleging failure to exhaust administrative remedies, ECF No. 46. Plaintiff filed an opposition to defendants' motion to dismiss and a separate opposition to defendants' motion for summary judgment. ECF No. 51, 52. Defendants replied on June 26, 2014 and filed objections with respect to both of plaintiff's oppositions. ECF No. 53, 54, 55.

II. Defendants' Motion to Dismiss the First Amended Complaint

Defendants move to dismiss plaintiff's first amended complaint on the grounds that plaintiff's claims against defendants are barred by the statute of limitations.

A. Legal Standard for Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a

2

complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" National Organization for Women, Inc. v. Scheidler, 510 U.S. 249, 256 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); and matters of public record, including pleadings, orders, and other papers filed with the court, Mack v. South Bay Beer Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986). The court need not accept legal conclusions "cast in the form of factual allegations."

////

////

////

B. <u>Allegations of the First Amended Complaint</u>[1]

Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) and brings this action alleging violations of plaintiff's Eighth Amendment rights "during his confinement by the [CDCR] at High Desert State Prison." ECF No. 34 at 5.

Plaintiff was transferred from San Quentin State Prison to High Desert State Prison on December 13, 2005. ECF No. 34 at 6. At this time, defendants Dr. Dial and Dr. James were licensed physicians working in a medical capacity in the delivery of health care services at High Desert State Prison. <u>Id.</u> at 6. Dr. James was plaintiff's designated physician. <u>Id.</u> at 11. Plaintiff states that between December 13, 2005 and March 5, 2006, he had six hernia-related emergencies, <u>id.</u> at 11, and alleges as follows:

<u>December 26, 2005</u>

On December 26, 2005 at approximately 11:30 p.m., plaintiff experienced "unbearable pain" when his hernia "protruded out." ECF No. 34 at 7. Plaintiff was taken to the clinic and examined by R.N. Flaughty, who informed defendant Dial of plaintiff's condition. <u>Id.</u> Dr. Dial instructed Flaughty to return plaintiff to his cell and to put plaintiff on the list for the doctor's line "ASAP." <u>Id.</u> Plaintiff complained to Flaughty that he was in too much pain to be returned to his cell without pain medication, but Flaughty said that decision was up to the doctor at the doctor's line and that plaintiff would have to ask the doctor for medication the following day. <u>Id.</u> Plaintiff was returned to his cell without treatment and suffered "extreme pain," vomiting, nausea, and hiccups while curled up on the floor of his cell for over ten hours. <u>Id.</u>

<u>January 10, 2006</u>

On January 10, 2006 at approximately 1 a.m., plaintiff's hernia protruded to "the size of an egg." ECF No. 34 at 7. Plaintiff was taken to the clinic where Nurse Haherty examined plaintiff's hernia and gave him Ibuprofen, which did not relieve his pain. <u>Id.</u> at 7-8. Plaintiff

---

[1] The court relies only the allegations contained in plaintiff's first amended complaint, ECF No. 34, and the attached exhibits. <u>See</u> <u>Durning v. First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987). To the extent plaintiff alleges new facts in his opposition to defendants' motion to dismiss, the court has not included them here.

4

requested stronger pain medication and informed the nurse that at San Quentin he had been prescribed Vicodin for his hernia pain, but the nurse advised plaintiff that she could not give him anything stronger than Ibuprofen. Id. at 8. Plaintiff was returned to his cell in severe pain with his hernia "still bulging." The nurse advised plaintiff that he was "on Doctor's Line for the morning." Id.

January 13, 2006

On January 13, 2006, plaintiff was examined by Dr. James at the doctor's line. ECF No. 34 at 8. Plaintiff explained that he had ongoing pain from a hernia "the size of an egg" and told Dr. James that prior to his transfer to High Desert State Prison, plaintiff had been scheduled for surgery. Id. Plaintiff asked Dr. James to schedule plaintiff for surgery, but James refused. Id. Dr. James explained that he saw no evidence of a hernia and that if plaintiff did have a hernia, it was not to the point where surgery was required. Id. Dr. James also told plaintiff that "Ibuprofen 400 mg is the strongest relief they give to inmates." Id. Plaintiff explained that as many as five such tablets fail to provide him with "even slight relief," but James denied plaintiff's request for stronger medication. Id.

January 27, 2006

On January 27, 2006 at approximately 8 p.m., plaintiff's hernia protruded again. ECF No. 34 at 9. Plaintiff was taken to the clinic where a nurse examined his hernia, which was "the size of a baseball." Id. Plaintiff was then transported to the Correctional Treatment Center (CTC) where he was examined by the Chief Medical Officer, Dr. Roche. Id. Dr. Roche instructed the nurse to give plaintiff a shot for the pain and tried to "reduce" plaintiff's hernia by massaging it. Id. Dr. Roche called Dr. James at home and Dr. James arrived at CTC about 45 minutes later. Dr. Roche ordered Dr. James to make arrangements for plaintiff to be accepted at an outside hospital for immediate surgery. Plaintiff was then transported to Washo Medical Center, but his emergency surgery was cancelled when plaintiff's hernia went back in at the last minute. At this point plaintiff's hernia had been "out" for five hours. Upon returning to High Desert State Prison, plaintiff was issued a prescription for Vicodin for his pain by the doctors at Washo Medical Center. Id. at 9. However, Dr. James cancelled the Vicodin order and instead gave plaintiff

5

"Ibuprofen 400 mg," which he knew would not relieve plaintiff's pain. Id. at 8-9.

February 15, 2006

On February 15, 2006 at approximately 9 p.m., plaintiff's hernia again protruded to "the size of a baseball." ECF No. 34 at 10. Plaintiff was taken to the clinic and then to CTC in unbearable pain. Id. At CTC, Dr. Dial instructed a nurse to give plaintiff a shot of medicine for his pain and to massage the hernia "back in." Id. Approximately four hours later, plaintiff's hernia went back in. Id. Dr. Dial then instructed the correctional officers to return plaintiff to his cell. Id.

February 26, 2006

On February 26, 2006 at approximately 11 p.m., plaintiff experienced "severe pain" when his hernia protruded again. ECF No. 34 at 10. Plaintiff was taken to the clinic and examined by Nurse Haherty, who called Dr. Dial. Dr. Dial instructed the nurse to return plaintiff to his cell and to "schedule plaintiff for Doctor's Line in the morning." Id. Dr. Dial was aware of plaintiff's "severe condition," but plaintiff was returned to his cell without treatment or pain medication. Id. at 10-11. Plaintiff spent the next eight hours "balled-up" on the floor of his cell, hiccupping, groaning in pain, and experiencing nausea. Id.

March 2006

On March 3, 2006, plaintiff was transported to an outside specialty clinic where he was examined by a surgeon and scheduled for surgery on March 22, 2006. ECF No. 34 at 11. After the examination, plaintiff was returned to High Desert State Prison. Id.

On March 5, 2006 at approximately 7 p.m., plaintiff's hernia came out again. ECF No. 34 at 11. Plaintiff experienced "extreme" pain and was taken to the clinic. Id. Dr. James examined plaintiff and had him taken to CTC, where he was given a shot and other medicine for his pain. Id. Dr. James got approval for plaintiff to be transported to Banner Lassen Medical Center for surgery the following day. Id. at 11-12.

On March 6, 2006, plaintiff underwent surgery for his hernia. ECF No. 34 at 12.

On March 8, 2006, plaintiff returned to High Desert State Prison. ECF No. 34 at 12. His pain medication was "instantly" changed from "Tylenol #3 codine" to 800 mg of Ibuprofen. Id.

1   Plaintiff had a single follow up visit with Dr. James approximately one week later and was then
2   "forgotten about." Id.  Plaintiff alleges that he "experienced pain continuously" and asserts that
3   he should have been kept on "Tylenol #3 codine" and "monitored for pain and healing" for at
4   least up to 90 days after his operation. Id.

5   Following the hernia operation, plaintiff's lower left abdomen remained swollen and he
6   developed a large keloid scar as well as large bulge or protrusion on his right side. ECF No. 34 at
7   12. Since plaintiff did not have the bulge prior to the operation, he believes it was caused by
8   mesh that was inserted inside him during his hernia operation. Id.

9   "Since the operation until this day," plaintiff has experienced sharp pain where the hernia
10  was as well as nightly urinary dysfunction. Id.  Plaintiff alleges that he "continuously complained
11  to medical[2] over the years, but [was] repeatedly ignored." Id.  Plaintiff's "on-going problems
12  stemming from [his] hernia operation . . . were only recently addressed by medical."[3] Id.
13  Plaintiff did not receive a proper examination until 2012, when he was transferred to Solano State
14  Prison. Id.

15  Plaintiff summarizes his allegations, stating that each defendant denied him adequate
16  medical treatment for severe pain on three "separate documented occasions." ECF No. 34 at 13.
17  Plaintiff specifies that Dr. Dial denied him adequate treatment on December 26, 2005; January
18  10, 2006; and February 26, 2006. Id.  Dr. James denied plaintiff treatment and adequate pain
19  medication on January 13, 2006; January 27, 2006; and February 15, 2006. Id.  Plaintiff alleges
20  that when he needed medical attention for severe pain caused by his hernia, he was denied
21  adequate treatment "an unreasonable number of times without any/or adequate pain medication,
22  compounding [his] suffering." ECF No. 34 at 13. He alleges that the harm he suffered "resulted
23  from the defendants [*sic*] actions on the (above) specific dates." Id.

24  Plaintiff seeks compensatory and punitive damages for the pain and suffering that resulted
25  from defendants' deliberate indifference to his serious medical need for immediate treatment of

---

[2] In the first amended complaint, plaintiff references "medical" but does not identify any specific individuals.
[3] Plaintiff again references "medical" but fails to identify any specific individuals.

his "hernia condition." Id. at 6, 14. His original complaint was filed on September 5, 2013.[4]

C. Defendants' Argument

Defendants assert that plaintiff's action is barred by the statute of limitations. Defendants contend that plaintiff's claim is based on five or six specific instances of alleged misconduct, all of which occurred in 2005 and 2006. ECF No. 45-1 at 1. Defendants provide a chart containing individual calculations as to when the four-year statute of limitations expired for each specific instance referenced by plaintiff.[5] Id. at 8. By defendants' calculations, the statute of limitations for the last alleged instance of misconduct (February 26, 2006) ran in 2010. Id. Defendants argue that plaintiff's complaint was filed in September 2013 and is therefore time-barred because it was filed several years outside of the limitations period.[6] Id.

D. Plaintiff's Opposition to Defendants' Motion to Dismiss

In opposition, plaintiff argues that the statute of limitations did not start to run until at least October 25, 2012, the date that he finally secured proper medical treatment, i.e. was seen by a hernia specialist. ECF No. 52 at 18-19. Plaintiff's opposition includes new factual allegations that were not alleged in the first amended complaint. Specific to defendants Dial and James, plaintiff alleges that after his March 6, 2006 surgery, Dr. James was his primary care physician until the time plaintiff left High Desert State Prison in November 2007. Id. at 9. Plaintiff alleges that in the period following his surgery through November 2007, he continuously complained to Dr. Dial and Dr. James, but was denied adequate treatment. Id. at 9, 13, 15. Plaintiff then makes a number of factual allegations against other doctors at Folsom State Prison, Centinela prison, and Solano State Prison, spanning the period of November 2007 through October 2012. Id. at 16-17.

---

[4] The date on plaintiff's proof of service controls for purposes of timeliness analysis. See Houston v. Lack, 487 U.S. 266, 275-76 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities); Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) (holding that "the Houston mailbox rule applies to § 1983 complaints filed by *pro se* prisoners").
[5] These dates include December 26, 2005; January 10, 2006; January 13, 2006; January 27, 2006; February 15, 2006; and February 26, 2006. ECF No. 45-1 at 8.
[6] Defendants also request that the court take judicial notice of the fact that the drug "Toradol IM" is used to treat pain. ECF No. 45-2. This request is not a matter appropriate for resolution under Federal Rule of Civil Procedure 12(b)(6). Accordingly, the request is denied.

8

Plaintiff contends that because all of his allegations are related to his lack of adequate hernia treatment at the various prisons, they constitute a "continuing violation" and therefore are not barred by the statute of limitations. Id. at 18-19.

E. Defendants' Reply

Defendants argue that in resolving the motion to dismiss the first amended complaint, the court should not consider the new factual allegations contained in plaintiff's opposition. ECF No. 53. Defendants contend that even if the new factual allegations are considered, plaintiff's claim is still time-barred because plaintiff does not allege any misconduct by defendants Dial or James after November 2007, when plaintiff left High Desert State Prison. Thus, the latest plaintiff's claim could have accrued was November 2007 and plaintiff would have had to file within four years of that date. Since plaintiff did not file until 2013, plaintiff's complaint is time-barred. ECF No. 53 at 1-2.

Defendants further contend that the continuing violation rule does not apply because, even assuming defendants' acts were part of a series of related acts against plaintiff, plaintiff did not allege that Dial or James committed any acts of deliberate indifference within the limitations period. ECF No. 53 at 2, 4-5. Accordingly, defendants contend that the continuing violation doctrine does not operate to delay the start of the limitations period in this case and plaintiff's claims should be dismissed as time-barred.

F. Statute of Limitations

Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 265 (1985); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). In California, a two-year statute of limitations applies. See Cal. Code Civ. P. § 335.1; Jones, 393 F.3d at 927. The federal court also applies the forum state's law regarding tolling, including equitable tolling when not in conflict with federal law. Hardin v. Straub, 490 U.S. 536, 537-39 (1989); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999), cert. denied, 529 U.S. 1117 (2000). California provides that the applicable limitations period is tolled for two years on grounds of "disability" when a litigant is incarcerated. Cal. Code Civ. P. § 352.1(a). This tolling provision operates to delay the running of the limitations period,

9

effectively extending the two-year personal injury limitations period to four years for inmates. See Carlson v. Blatt, 87 Cal.App.4th 646, 650 (2001) (imprisonment tolls running of limitations period for two years from accrual of cause of action); Fink, 192 F.3d at 914 (same); Ellis v. City of San Diego, 176 F.3d 1183, 1189 (9th Cir.1999) (same).  Accordingly, California inmates have a total of four years from the accrual of a cause of action to file a complaint.  This four-year period is also tolled while administrative remedies are being exhausted.  Brown v. Valoff, 422 F.3d 926, 942–43 (9th Cir.2005) (prisoners are entitled to equitable tolling of the statute of limitations while completing the mandatory exhaustion process).

Accordingly, defendants are correct that plaintiff had four years from the date of accrual of this cause of action to file his complaint.  With respect to tolling based on administrative exhaustion, the exhibits attached to plaintiff's complaint indicate that a director's level appeal decision was issued on July 3, 2006, denying plaintiff's request for pain medication and hernia surgery.  ECF No. 34 at 48.  Plaintiff was therefore entitled to tolling of the limitations period until this date.  See Brown, 422 F.3d at 942–43.

G.  Date of Accrual

The point of contention in this case is not the length of the limitations period but rather the date on which plaintiff's claim accrued, thereby starting the clock on the limitations period.  Federal law governs when a cause of action accrues in the § 1983 context.  Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998).  A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  Knox v. Davis, 260 F.3d 1009, 1012-13 (9th Cir. 2001).  When the claim is based on an allegation of deliberate indifference to serious medical need, the claim accrues when the plaintiff knew or had reason to know of the defendants' deliberate indifference.  See TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir. 1999).  In TwoRivers, for example, the plaintiff alleged that two Arizona Department of Corrections employees were deliberately indifferent to his serious medical needs after he underwent a surgical procedure to remove a cancerous growth while incarcerated at the Tuscon prison complex.  174 F.3d at 990.  In determining when the cause of action accrued, the Ninth Circuit held that the plaintiff knew or had reason to know of the defendants' deliberate

indifference on the date he was returned to the Tuscon prison complex after receiving the alleged improper medical care. Id. at 991-92.

In the present case, plaintiff's claim accrued when he knew or had reason to know of Dr. Dial and Dr. James' acts of deliberate indifference to his serious medical needs. With respect to defendant Dial, plaintiff alleges that Dr. Dial was deliberately indifferent to his serious medical needs on December 26, 2005; January 10, 2006; and February 26, 2006. These are the only allegations made against Dr. Dial in the first amended complaint. Accordingly, plaintiff knew or had reason to know of Dr. Dial's deliberate indifference on February 26, 2006. See TwoRivers, 174 F.3d at 991-92.

As to defendant James, plaintiff alleges that Dr. James was deliberately indifferent to his serious medical needs on January 13, 2006; January 27, 2006; and February 15, 2006. Id. Plaintiff follows these specific allegations with a more general claim that following his March 6, 2006 hernia surgery, plaintiff was given Ibuprofen and received only one follow up visit with Dr. James, when he should have been given "Tylenol #3 codine" and monitored for up to 90 days after surgery. Construed in plaintiff's favor, this allegation gives rise to the inference that Dr. James failed to adequately treat plaintiff for up to 90 days after his hernia operation. Thus, plaintiff had reason to know of Dr. James' deliberate indifference on or about June 6, 2006 (90 days after plaintiff's March 6, 2006 operation). See TwoRivers, 174 F.3d at 991-92.

The conclusion that plaintiff knew or had reason to know of defendants' deliberate indifference in 2006 is not altered by plaintiff's vague allegation that he continuously complained "to medical" and was repeatedly ignored until 2012. This general allegation cannot reasonably be interpreted to refer to any actions by defendants James or Dial, particularly in light of the specificity of plaintiff's other allegations, which include dates, times, and names of nurses and other medical personnel. Because plaintiff failed to allege that his complaints "to medical" were directly connected to either defendant, these allegations do not affect the date on which plaintiff knew or had reason to know of deliberate indifference by James or Dial. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976) (claims under § 1983 require an actual connection or link between the actions of defendants and the

11


deprivation alleged to have been suffered by plaintiff).

Even if the court were to consider the facts alleged in plaintiff's opposition, this would not connect any actions by defendants to plaintiff's generic allegation that he was ignored until 2012. In his opposition, plaintiff alleges that he complained to defendants Dial and James until November 2007, when plaintiff was transferred to Centinela State Prison. ECF No. 52 at 16. Thus, even if the court were to consider these allegations, plaintiff knew of Dr. James and Dr. Dial's deliberate indifference at the latest in November 2007, when plaintiff left High Desert State Prison. See TwoRivers, 174 F.3d at 991-92; see also Marroquin v. Cate, C 11-4535 SMA (PR), 2014 WL 4954717, at *6 (N.D. Cal. Sept. 30, 2014) (plaintiff's deliberate indifference claim based on inadequate medical care while at Salinas Valley State Prison accrued at the latest on the date plaintiff was transferred to a prison in Arizona). Accordingly, even considering the facts alleged in his opposition, plaintiff's cause of action against defendants James and Dial accrued at the latest in November 2007. In the absence of another doctrine that could delay the date the cause of action accrued, the statute of limitations period started to run in November 2007 and expired four years later in November 2011, making plaintiff's 2013 complaint untimely.

### H. Continuing Violation Doctrine

"The continuing violations theory applies to § 1983 actions . . . allowing a plaintiff to seek relief for events outside of the limitations period." Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). The doctrine has the "effect of . . . restart[ing] the statute of limitations" when there are "repeated instances or continuing acts of the same nature, as for instance, repeated acts of sexual harassment or repeated discriminatory employment practices." Sisseton-Wahpeton Sioux Tribe v. United States, 895 F. 2d 592, 597 (9th Cir. 1990); Airweld, Inc. v. Airco, Inc., 742 F.2d 1184, 1189-90 (9th Cir. 1984). However, the Ninth Circuit has "repeatedly held that a mere continuing *impact* from past violations is not actionable." Knox, 260 F.3d at 1013 (quotations and citations omitted); Abramson v. Univ. of Haw., 594 F.2d 202, 209 (9th Cir.1979) ("The proper focus is upon the time of the ... acts, not upon the time at which the consequences of the acts became most painful."). Discrete "acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122

(2002). Rather, "[t]he doctrine applies where there is no single incident that can fairly or realistically be identified as the cause of significant harm." Flowers v. Carville, 310 F.3d 1118, 1126 (9th Cir. 2002).

In order to establish that the continuing violation theory applies, a plaintiff must allege either a serial violation or a systemic violation. Douglas v. Cal. Dept. of Youth Authority, 271 F.3d 812, 822 (9th Cir. 2001). In other words, plaintiff must allege either (1) "a series of related acts against [him], of which at least one falls within the relevant period of limitations," or (2) a systematic policy or practice . . . that operated, in part, within the limitations period." Id.

Plaintiff's complaint is based on allegations of discrete acts of deliberate indifference by defendants in 2005 and 2006, to which the continuing violation theory does not apply. See Morgan, 536 U.S. at 122. While plaintiff states that he suffered "ongoing" harm after his hernia operation, ECF No. 34 at 12, the substance of plaintiff's complaint indicates that he brought suit to address violations that occurred "during his confinement by the [CDCR] at High Desert State Prison," ECF No. 34 at 5. Plaintiff specifically alleges that the harm he suffered was caused by defendants' "actions on the (above) specific dates." ECF No. 34 at 13-14. Accordingly, this is not a case "where there is no single incident that can fairly or realistically be identified as the cause of significant harm." See Flowers, 310 F.3d at 1126.

Moreover, it is clear that plaintiff's continuing violation argument must fail because plaintiff has not alleged any acts by defendants Dial or James within the statute of limitations period (i.e. within four years prior to the date the complaint was filed). The first amended complaint includes no allegations with respect to James or Dial after 2006, and even plaintiff's opposition contains no allegations with respect to either defendant after November 2007. To the extent that plaintiff's allegation that he complained "to medical over the years" may fall within the limitations period, plaintiff does not allege that this was part of a series of related acts committed against plaintiff by James or Dial. Accordingly, the continuing violation rule does not apply. See Douglas, 271 F.3d at 822.

Furthermore, even if the court were to ignore the fact that plaintiff's new allegations regarding inadequate medical treatment at other prisons were raised for the first time in his

13

1 opposition, plaintiff's claims still would not be saved because these allegations are based on the
2 deliberate indifference of defendants who are not parties to this lawsuit.  The court has found no
3 authority, and plaintiff cites none,[7] for the proposition that allegations against defendants who are
4 not parties to the lawsuit can be used to establish the applicability of the continuing violation
5 doctrine in order to bring untimely claims against the named defendants within the limitations
6 period.  To the extent plaintiff contends that the allegations against doctors at other prisons can be
7 considered because he was not required to name all defendants in his complaint, ECF No. 52 at
8 16, the court rejects plaintiff's argument.  If plaintiff intended to allege claims against defendants
9 other than James and Dial, such a request required a motion to amend the complaint.  See
10 Fed.R.Civ.P. Rule 15(a).  No such motion has been filed.

11 Because the continuing violation doctrine does not apply on the facts presently before the
12 court, the undersigned finds that plaintiff's claim of deliberate indifference against Dr. Dial and
13 Dr. James could not have accrued later than November 2007.  Accordingly, plaintiff's 2013
14 complaint is time-barred because it was not filed within the four-year statute of limitations period,
15 which expired at the latest in 2011.  Defendants' motion to dismiss plaintiff's claims on statute of
16 limitations grounds should therefore be granted.[8]

17    III.    Amendment

18 Defendants contend that plaintiff's claims should be dismissed without leave to amend,
19 arguing that amendment would be futile because plaintiff's claims are barred by the statute of
20 limitations.  ECF No. 45-1 at 14.  The court agrees.

21 The Federal Rules provide that leave to amend pleadings "shall be freely given when
22 justice so requires."  Fed.R.Civ.P. 15(a).  "[T]his policy is to be applied with extreme liberality."
23 Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir.1990) (citing DCD

---

[7] Plaintiff cites a number of cases, including Heard v. Sheahan, 253 F.3d 316 (7th Cir. 2001), and Lavelle v. Listi, 611 F.2d 1129 (5th Cir. 1980), where the continuing violation doctrine was applied.  However, none of these cases turned on allegations against defendants who were not parties to the lawsuit.

[8] To the extent defendants go on to make additional arguments as to why plaintiff's claims should be dismissed, the court does not reach these arguments.

1   Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir.1987)).  However, the futility of

2   amendment can by itself justify denial of leave to amend.  Bonin v. Calderon, 59 F.3d 815, 845

3   (9th Cir. 1995).  Amendment is futile, inter alia, where the applicable statute of limitations bars

4   the proposed amendments.  See Deutsch v. Turner Corp., 324 F.3d 692, 718 n. 20 (9th Cir.2003);

5   Platt Elec. Supply, Inc. v. Eoff Elec., Inc., 522 F.3d 1049, 1060 (9th Cir.2008).

6          Here, defendants James and Dial are the sole remaining defendants in this lawsuit.  The

7   court has considered the allegations contained in plaintiff's first amended complaint and

8   plaintiff's opposition to defendants' motion to dismiss, and finds no indication that plaintiff

9   would be able to amend his complaint so as to state timely claims against these two defendants.

10  Plaintiff makes clear that he left High Desert State Prison, where defendants were employed as

11  doctors, in November 2007.  There is no suggestion at all that plaintiff had any contact with either

12  defendant after he left High Desert, or that either committed any acts with respect to plaintiff after

13  November 2007.  In the absence of any allegations of inadequate treatment by James and Dial

14  within the limitations period, plaintiff's claims as to James and Dial will be barred by the statute

15  of limitations, making amendment as to these defendants "an exercise in futility."  See Steckman

16  v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although there is a general rule that

17  parties are allowed to amend their pleadings, it does not extend to cases in which any amendment

18  would be an exercise in futility, or where the amended complaint would also be subject to

19  dismissal . . .") (internal citations omitted).  Accordingly, the undersigned recommends that

20  plaintiff's complaint be dismissed without leave to amend.

21      Plaintiff is informed that dismissal of this lawsuit against defendants James and Dial has

22  no effect on his ability to file a separate lawsuit against any other individuals who have caused

23  injury within the applicable limitations period.

24      IV.     Motion for Partial Summary Judgment

25      Defendants contend that plaintiff did not fully exhaust administrative remedies and move

26  for partial summary judgment with respect to the unexhausted portions of plaintiff's first

27  amended complaint.  ECF No. 46.  Because the undersigned recommends that plaintiff's first

28  amended complaint be dismissed, the court does not reach the summary judgment issue.

Accordingly, defendants' motion for partial summary judgment is denied as moot.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' request for judicial notice (ECF No. 45-2) is denied; and
2. The March 4, 2015 Order and Findings and Recommendations (ECF No. 75) are vacated.

IT IS FURTHER RECOMMENDED that:

1. Defendants' motion to dismiss (ECF No. 45) be granted without leave to amend; and
2. Defendants' motion for partial summary judgment (ECF No. 46) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 25, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE